**UNITED STATES of America, Appellee,**

v.

**Brian PANTIN, Defendant–Appellant.**

**Docket No. 97–1702.**

United States Court of Appeals, Second Circuit.

Argued Aug. 12, 1998.

Decided Aug. 25, 1998.

Steven M. Statsinger, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York City, for Defendant–Appellant.

Robert R. Strang, Assistant United States Attorney, for Mary Jo White, United States Attorney for the Southern District of New York (Robert E. Rice, Assistant United States Attorney, on the brief), for Appellee.

Before: CALABRESI, CABRANES, and STRAUB, Circuit Judges.

PER CURIAM:

Brian Pantin, a citizen of Trinidad & Tobago, first came to the United States on Sep-

tember 15, 1976. On November 21, 1988, he was convicted in state court of Robbery in the First and Second Degree in violation of N.Y. Penal Law § 160.15. After serving almost four years in prison, Pantin was released on September 17, 1992. Some 18 months later, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against him and, on June 11, 1994, Pantin was deported to Trinidad & Tobago. Less than one month later, Pantin returned to the United States. On December 26, 1995, he was arrested in New York City for Grand Larceny and Criminal Mischief and was sentenced to an additional two years imprisonment for violating the terms of his parole for the 1988 conviction. The INS lodged a detainer on Pantin on April 19, 1996, and, after completion of his second term of state imprisonment, he was taken into federal custody on May 8, 1997.

In a single-count indictment brought in the United States District Court for the Southern District of New York (Denise Cote, *Judge* ), Pantin was charged with violating 8 U.S.C. § 1326(a) and § 1326(b)(2) (both amended in 1996),[1] and on June 16, 1997, he pled guilty to the charge. Section 1326(a) criminalizes illegal reentry for those aliens previously "denied admission, excluded, deported, or removed" and provides for a punishment of up to two years imprisonment. Section 1326(b)(2) provides for an enhanced sentence of up to twenty years imprisonment for those aliens, convicted of illegal reentry, whose "removal was subsequent to a conviction for commission of an aggravated felony." [2]

Prior to sentencing, Pantin raised several objections to his Presentence Report. Specifically, since in 1994 he had been "deport-ed," rather than removed, he claimed that his case was not within, the scope of § 1326(b)(2)'s sentencing enhancement. Relying on the decision of Judge Cedarbaum in *United States v. Ventura–Candelario*, 981 F.Supp. 868 (S.D.N.Y.1997) [3]—a case involving substantially similar factual circumstances—Judge Cote rejected Pantin's argument and proceeded to sentence him under § 1326(b)(2) to a term of 70 months' imprisonment followed by three years of supervised release. On appeal, Pantin reasserts his argument that, since he was originally "deported" rather than "removed," he is not subject to § 1326(b)(2)'s enhanced sentencing provision.

On September 30, 1996, President Clinton signed into law the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"). The IIRIRA made a number of significant changes to the immigration laws. One of these did away with the previous legal distinction among deportation, removal, and exclusion proceedings. *See* IIRIRA § 304 (codified at 8 U.S.C. §§ 1229–1229c) (merging deportation, removal, and exclusion proceedings into a broader category entitled "removal proceedings"); *id.* § 306 (codified at 8 U.S.C. § 1252) (redesignating "orders of deportation" as "orders of removal").

The IIRIRA also amended 8 U.S.C. § 1326(b)(2). While the previous language of the section spoke of aliens "whose deportation was subsequent to a conviction for commission of an aggravated felony" and subjected them to imprisonment for up to twenty years if they attempted illegal reentry, the altered provision substituted the term "re-

---

**1.** Both of the relevant provisions were amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009, 3009–546 (1996), which was enacted on September 30, 1996, and took effect on April 1, 1997. *See* IIRIRA § 305(b)(1)-(3) (amending 8 U.S.C. § 1326(b)); *id.* § 308(d)(4)(J) (amending 8 U.S.C. § 1326(a)); *id.* § 308(e)(1)(K) (amending 8 U.S.C. § 1326(b)); *id.* § 324 (amending 8 U.S.C. §§ 1326(a)(1), 1326(b)).

**2.** 8 U.S.C. § 1101(a)(43)(F)(1994 & West Supp. 1998) defines the term "aggravated felony" as

including "a crime of violence ... for which the term of imprisonment [is] at least one year." On appeal, Pantin docs not dispute that his 1988 robbery conviction qualifies as an "aggravated felony."

**3.** The defendant in *Ventura–Candelario* has appealed the district court's decision, and that appeal is currently pending, but has not yet been heard, before this Court. *See United States v. Ventura–Candelario*, No. 97–1637 (2d Cir. filed Nov. 7, 1997).

moval" for "deportation."[4]  *See* IIRIRA § 308(e)(1)(K).

We agree with Judge Cedarbaum's careful opinion in *Ventura–Candelario,* concluding that previously deported aliens are still meant to be covered by the amended § 1326(b)(2).  *See* IIRIRA § 309(d), 110 Stat. 3009, 3009–627 (stating that "any reference in [this subtitle] to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation").  As a result, we affirm Judge Cote's decision for substantially the reasons stated by Judge Cedarbaum in *United States v. Ventura–Candelario,* 981 F.Supp. 868 (S.D.N.Y.1997).

---

4.  Under the previous statutory regime, there would be no doubt as to § 1326(b)(2)'s applica-

bility to Pantin's case.